# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:13-cv-0088-RJC-DSC

| | |
|---|---|
| **FORSHAW INDUSTRIES, INC.,** | )<br>)<br>) |
| Plaintiff, | ) **MEMORANDUM AND RECOMMENDATION**<br>)<br>) |
| v. | )<br>) |
| **INSURCO, LTD., et. al.,** | )<br>) |
| Defendants. | )<br>)<br>) |

**THIS MATTER** is before the Court on the Rubin Defendants' "… Motion to Dismiss" (document #23), the Insurco Defendants' "Motion to Dismiss …" (document #26),[1] and the parties' briefs and exhibits.  See documents ##24, 25, 27-30, and 39-43.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and these Motions are now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that the Motions to Dismiss be <u>granted in part</u> and <u>denied in part</u>, that is, that the parties be compelled to arbitrate their dispute and this action be stayed pending arbitration, as discussed below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Accepting the factual allegations of the Second Amended Complaint ("the Complaint") as true, Plaintiff is a North Carolina corporation and the parent company of Forshaw Chemicals,

---

[1] "Rubin Defendants" refers to Defendants John Rubin and Rubin Insurance Brokers, Inc.  "Insurco Defendants" refers to all other Defendants in this case.

Inc. and Forshaw Distribution, Inc. (collectively "Plaintiff").  Plaintiff engaged in the formulation and distribution of pest control and wood treatment products at its principal place of business at 650 State Street in Charlotte, North Carolina ("the Site").

Plaintiff entered into seven insurance contracts with the Insurco Defendants. The Rubin Defendants acted as the Insurco Defendants' agents in these transactions. Plaintiff alleges that Defendants Glessner, McNair and Marshall are "agent[s]/principal[s]" of the other Insurco Defendants. Defendant Glessner is a citizen of North Dakota. Defendant McNair is a citizen of New Jersey.  The remaining Defendants are citizens of Canada, the Isle of Man, and Grand Cayman.

Plaintiff alleges that "all of the Policies provide coverage for Plaintiff's operation in North Carolina." "Second Amended Complaint" at 7 (document #18).

The first policy (identified in the Complaint as "AGL2000") was effective from January 1, 1980 through June 1, 1987. It does not contain an arbitration provision.  The remaining policies, in the aggregate, were in effect from June 1, 1987 through November 30, 2004. Id. Each of these six policies contains an arbitration provision.

Plaintiff had chemical spills at the Site. The dates of the spills are not alleged in the Complaint.  The United States Environmental Protection Agency ("EPA") and the North Carolina Department of Environment and Natural Resources ("NCDENR") required Plaintiff to remediate the chemical spills. Plaintiff provided notice to Defendants of expenses it incurred during the remediation process. On April 15, 2009, Plaintiff's claims were denied because of late notice and a pollution exclusion in the policies.

Plaintiff filed this action on February 12, 2013.  As amended, the Complaint states claims

for breach of contract, bad faith breach of contract, fraud and constructive fraud, "failure to procure insurance (negligence and breach of contract)," negligent misrepresentation, and "unfair or deceptive trade practices." Plaintiff seeks compensatory damages "in excess of $75,000" as well as punitive damages, attorneys' fees, and costs.

On June 19, 2013, the Rubin Defendants filed their Motion to Dismiss based upon the arbitration agreements.

On June 27, 2013, the Insurco Defendants filed their Motion to Dismiss which also seek dismissal based upon the arbitration agreements.

In the alternative, both Motions seek an order staying this action and compelling arbitration.

Defendants' Motion to Dismiss have been fully briefed and are ripe for disposition.

## II. DISCUSSION

The Federal Arbitration Act ("FAA") establishes a policy favoring arbitration. The FAA provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA requires courts to stay proceedings and compel arbitration in the event of a refusal to comply with a valid agreement to arbitrate. 9 U.S.C. § 3. The court must compel arbitration even if the disputed claims are exempted from arbitration or otherwise considered non-arbitrable under state law. Perry v. Thomas, 482 U.S. 483, 489 (1987) (state statute that required litigants to be provided a judicial forum for resolving wage disputes "must give way" to Congress' intent to provide for enforcement of arbitration agreements); Am. Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 90 (4th Cir. 2005) (FAA preempts state law barring arbitration of certain

3

claims).

The Supreme Court has held that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). "Pursuant to that liberal policy, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone, 460 U.S. at 24-25; see also Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 710 (4th Cir. 2001); Long v. Silver, 248 F.3d 309, 315-16 (4th Cir. 2001); O'Neil v. Hilton Head Hosp., 115 F.3d 272, 273-74 (4th Cir. 1997). The Fourth Circuit has stated that:

> [T]he heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration. Thus, we may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

Long, 248 F.3d at 315-16 (internal citations omitted).

On the other hand, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). See also AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 648 (1986); Johnson v. Circuit City Stores, Inc., 148 F.3d 373, 377 (4th Cir. 1998); Arrants v. Buck, 130 F.3d 636, 640 (4th Cir. 1997).

Prior to determining the scope of an arbitration agreement, the court must determine that a valid agreement to arbitrate exists between the parties by applying "ordinary state-law

4

principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); see also Hill v. PeopleSoft USA, Inc., 412 F.3d 540, 543 (4th Cir. 2005).

Specifically, "courts should remain attuned to well supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds for the revocation of any contract." Gilmer, 500 U.S. at 33 (internal quotations and citations omitted). For instance, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [9 U.S.C.] § 2." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996).

Arbitration is also favored in North Carolina. Tillman v. Commer. Credit Loans, Inc., 655 S.E.2d 362, 369 (N.C. 2008) (citing Cyclone Roofing Co. v. David M. LaFave Co., 321 S.E.2d 872, 876 (N.C. 1984). In North Carolina, "[a] two-part analysis must be employed by the court when determining whether a dispute is subject to arbitration: (1) whether the parties had a valid agreement to arbitrate, and also (2) whether the specific dispute falls within the substantive scope of that agreement." Munn v. Haymount Rehab & Nursing Ctr., Inc., 704 S.E.2d 290, 294 (N.C. Ct. App. 2010). Additionally, "[t]he law of contracts governs the issue of whether there exists an agreement to arbitrate"... and "the party seeking arbitration must show that the parties mutually agreed to arbitrate their disputes." Id. (citing Harbour Point v. DJF Enters., 688 S.E. 2d 47, 50 (citations and quotation marks omitted)).

Applying those legal principles here, the undersigned concludes that Defendants are entitled to an order compelling arbitration. There is no dispute that the matters at issue fall within the scope of the six arbitration agreements. Plaintiff resists arbitration on the grounds that it "has more recently discovered that Defendants operated a complex, multilayered, illegal

5

international insurance business which was in direct, intentional, and knowing violation of state and federal law." "Plaintiff's Response …" at 2 (document #39). Plaintiff has pled no facts in support of this contention, other than the general allegations that Defendants sold them insurance and later denied coverage for the chemical spills.

For the reasons asserted in the Insurco Defendants' reply brief, Plaintiff's arguments concerning the expense of arbitration, the selection of English arbitrators, and the exclusion of punitive damages by two of the policies are insufficient to avoid enforcement of otherwise valid arbitration agreements. Document #42 at 9-14.

In sum, the undersigned finds that Defendants have shown that the parties entered in to valid agreements to arbitrate and that the specific dispute falls within the scope of those agreements. Munn, 704 S.E.2d at 294. The undersigned also finds that there are no generally applicable contract defenses that may be applied to invalidate the arbitration agreements. Doctor's Assocs., Inc., 517 U.S. at 687.

The first policy, issued by Defendant Inter-Industry Insurance Company ("Inter-Industry"), is subject to arbitration along with the six policies that contained arbitration agreements. Inter-Industry acquired Defendant Agrichem Insurance Company, the issuer of the policy in effect from June 1, 1987 through June 30, 1994. That policy did contain an arbitration agreement. Principles of judicial economy and efficiency dictate that disputes arising among the same parties from these seven related policies should be combined for arbitration.

Although the Court has the discretion to dismiss an action where all the issues raised are arbitrable, the more common practice is to stay the action or those claims pending the outcome of arbitration in order to provide a convenient forum for confirmation of any ensuing arbitration

6

award. See 9 U.S.C. § 3 ("a stay is mandatory upon a showing that the opposing party has commenced suit upon any issue referable to arbitration...."); 9 U.S.C. § 9 ("any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated").

## III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the Rubin Defendants' "… Motion to Dismiss" (document #23) and the Insurco Defendants' "Motion to Dismiss …" (document #26) be **GRANTED IN PART** and **DENIED IN PART,** that is, that the parties be compelled to arbitrate their dispute and that this action be stayed pending arbitration.

## IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED.**

Signed: October 3, 2013

David S. Cayer
United States Magistrate Judge