**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:13-cv-88-RJC-DSC**

| | |
|---|---|
| **FORSHAW INDUSTRIES, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )　　　　　**ORDER** |
| | ) |
| **INSURCO, LTD. et. al.,** | ) |
| | ) |
| **Defendants** | ) |
| | ) |

## I.　　BACKGROUND

**THIS MATTER** is before the Court on the Rubin Defendants' Motion to Dismiss (Doc. 23), the Insurco Defendants' Motion to Dismiss (Doc. 26), the parties' briefs and exhibits (Docs. 24, 25, 27-30, 39-43), the Magistrate Judge's Memorandum and Recommendation (M&R) (Doc. 44), and the parties' objections (Docs. 45, 46).

It is ripe for review.

### A.　　Background

This case presents a thicket of parties and contracts and business entities sprawling across decades and national boundaries alike.  At heart, the case involves the actions and obligations of various parties as related to a series of insurance contracts procured by Plaintiff.

There are seven insurance contracts and one "Administrative Services Agreement" at issue.  They are the following:

- AGL-2000: Effective January 1, 1980[1]

---

[1] The parties dispute the effective date of the initial insurance contract.  Plaintiff alleges in the Complaint that the AGL-2000 became effective on January 1, 1980. (Doc. No. 1 ¶17a).  Defendant contends in its reply motion that the initial policy was effective February 1, 1986.  (Doc. No. 42 at 5).  In support of this contention, Defendant submitted Certificate AGL-2039 which was signed on February 1, 1986, marking the initiation of coverage.  (Doc.

- CGL-1009: Effective June 1, 1987
- CGL-4013: Effective June 30, 1994
- UML-4014: Effective January 31, 2001
- CGL-4039: Effective November 30, 2002
- CGL-4109:Effective November 30, 2004
- UML-4106:Effective November 30, 2004
- Administrative Services Agreement between Forshaw Industries and Rubin Insurance Brokers: Effective August 31, 2006

The parties, several of whose identities and locations are unknown to the Plaintiff, are the following: Forshaw Industries (Plaintiff/Forshaw) produces and distributes chemical products in Charlotte, North Carolina; the Insurco Defendants, identified here collectively, are counter-parties to Plaintiff in the insurance contracts; the Rubin Defendants acted as agents for the Insurco Defendants and include John Rubin and Rubin Insurance Brokers (RIBI)(collectively: Rubin Defendants); Defendants Glessner, McNair and Marshall also acted as agents for the Insurco Defendants.[2]  Defendant Glessner is a citizen of North Dakota, while Defendant McNair is a citizen of New Jersey.  The remaining Defendants are citizens of Canada, the Isle of Man, and Grand Cayman.

B.    Factual Background

Plaintiff Forshaw produced and distributed pest control and wood treatment products at its facility in Charlotte, North Carolina.  Forshaw entered into a series of insurance contracts with the Insurco defendants, the first of which became effective on January 1, 1980 and

---

No. 28-5 at 6).  The Court declines to address this question of fact at this point.  Instead, it assumes the factual allegations in the Complaint, including the date of initial coverage, to be true.

[2] The Defendants identified collectively as "Insurco Defendants" are the following: Insurco, Ltd., A&G Insurance Company, Ltd., Insurco Reinsurance, Ltd., Inter-Agency Insurance Company, Ltd., Imanco Ltd., Insurco International, Ltd., and Agrichem Insurance Company, Ltd..

remained so until June 1, 1987.[3]  This contract did not contain an arbitration clause.  The remaining contracts, in the aggregate, were in effect from June 1, 1987 through, at the earliest, November 30, 2007.  Each of the succeeding contracts contained an arbitration clause, but the venue provisions and choice of venue varied over the course of contracts.  In contract CGL-1009, effective August 24, 1993, the parties agreed to arbitrators chosen from a pool of former and current officials of English casualty insurance or reinsurance companies who would construe the policy in accordance with the laws of England and choose where to conduct the proceeding. (English clause).  (Doc. 28-6 at 31).

The English clause remained in place through the series of contracts until November 30, 2002 when the parties signed a provision directing arbitration to be administered by three arbitrators form the American Arbitration Association (AAA) under its Commercial Arbitration Rules and to take place in New York, New York (AAA clause).  (Doc. 28-9 at 25). Additionally, the arbitrators were precluded from awarding punitive or exemplary damages, a provision that would remain through later iterations of the arbitration agreement.  (Doc. 28-8 at 37).  Signifying an intent to be governed no longer by the English clause, the parties included a provision expressly deleting it from UML 4014.  (Doc. 28-9 at 21).  The AAA clause remained in effect for the remainder of the contracts between Forshaw and the Insurco Defendants.

Finally, on August 31, 2006, Forshaw and the Rubin Defendants formed an Administrative Services Agreement (Agreement) whereby RIBI would act as the Named Insurance Representative (NIR) for Forshaw with respect to business transacted with the Insurco Defendants.  (Doc. 24-1).  The Agreement contained an arbitration provision that designated that

---

[3] See FN 1.

the Agreement would be construed in accordance with the laws of Manitoba, Canada and that any dispute would be referred to arbitration there (Manitoba clause). (Id. at 2).

Plaintiff had chemical spills ("occurrences") at the Site and was compelled to expend money to remediate the spills at the behest of state and federal agencies. Plaintiff does not allege in his complaint when these spills occurred. At some point, Plaintiff submitted a claim to Defendants which was denied on April 15, 2009 because of late notice and pollution exclusions in the policies. (Doc. 18 at ¶ 27). Plaintiff filed suit in this Court on February 12, 2013.

A.    Procedural Background

Alleging complete diversity of citizenship and an amount in controversy exceeding $75,000, Plaintiff filed this action under 28 U.S.C. § 1332. (Doc. 1). After Plaintiff twice amended its Complaint, the Rubin Defendants moved to dismiss for lack of subject matter jurisdiction, improper venue, or, in the alternate, to compel arbitration and stay the matter until completed. (Doc. 24, 25). The Insurco Defendants moved to dismiss for insufficient process, improper service of process, lack of personal jurisdiction, failure to state a claim, failure to plead fraud with particularity, and that Plaintiff's claims were barred under the Statute of Limitations. (Docs. 26-30). The Insurco Defendants also moved, in the alternative, to compel arbitration and stay the matter pending the outcome. (Id.).

Plaintiff contends that the Court should deny Defendants' motions. (Docs. 39, 40). Specifically, Plaintiff states that the arbitration clauses are void because they were induced by fraud and that it would be unconscionable to enforce them. (Id.).

On October 4, 2013, the Magistrate Judge issued an M&R which recommended denying Defendants' respective motions to dismiss but granting the motions to compel arbitration. (Doc.

No. 44). Forshaw and the Insurco Defendants filed timely objections to the M&R which the Court now considers along with their replies. (Docs. 45-48).

## II.    STANDARD OF REVIEW

A party may file specific, written objections to a magistrate judge's M&R within fourteen days after being served with a copy of the recommended disposition. 28 U.S.C. § 636(b)(1); see also FED. R. CIV. P. 72(b); United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (holding that "a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection"). A district judge must conduct a de novo review of those portions of the report to which proper objections are made. 28 U.S.C. § 636(b)(1).

## III.    ANALYSIS

The Court reviews de novo those matters on which the parties have lodged specific objections.

    A.    <u>Personal Jurisdiction</u>

        1.    Service of Process

<u>Added Defendants</u>

Defendants contend that Plaintiff's Second Amended Complaint which added as defendants Inter-Industry Company, Ltd., Imanco, Ltd., Insurco International, Ltd., Agrichem Insurance Company, Ltd., (added Defendants) should be dismissed under Rule 12(b)(4) because service of summons has not been made on these parties. A court cannot exercise personal jurisdiction over a defendant until it has been served with a summons. <u>Omni Capital Int'l v. Rudolph Wolff & Co., Ltd.</u>, 484 U.S. 97, 104 (1987). Plaintiff contends that counsel for the Defendants has communicated to Plaintiff that all of the added parties are no longer in existence

and that their obligations and liabilities have been assumed by other Insurco Defendants which have been served.  (Doc. 40 at 7).  Plaintiff states that it intends "to clarify, via Discovery upon those Defendants which have already been served summons, whether Plaintiff needs to burden the Court, the State, and the parties with pursuit of service upon the added Defendants or if these parties can be voluntarily dismissed from the suit."  (Id.).

Rule 4(h)(2) of the Federal Rules of Civil Procedure requires that service on a foreign corporation must be accomplished in "any manner prescribed by Rule 4(f) for serving an individual, except personal delivery . . . ." FED.R.CIV.P. 4(h)(2).  Rule 4(f) permits service in a foreign country "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention . . . ."  FED.R.CIV.P. 4(f)(1).  Plaintiff's attempt to serve the added Defendants via the North Carolina Commissioner of Insurance is not sufficient here to comport with the requirements of Rule 4(f).

Whenever the Hague Convention applies, it pre-empts state law methods of service, and compliance with its terms is mandatory.  Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 699 (1988).  The primary means through which service is accomplished under the Convention is through a receiving country's "Central Authority."  Brockmeyer v. May, 383 F.3d 789, 801 (9th Cir. 2004).  The record demonstrates that Plaintiff made no attempt to procure service via the central authority of the country of residence of any of the added Defendants.

Accordingly, the Court finds that the added Defendants have not received adequate service of process and are not subject to the personal jurisdiction in this Court.  The Court **GRANTS** Defendants' Motion to Dismiss for Improper Service of Process and **DISMISSES from this case** Inter-Industry Company, Ltd., Imanco, Ltd., Insurco International, Ltd., Agrichem Insurance Company, Ltd.

<u>Marshall</u>

Defendant Marshall resides in the Isle of Man and is subject to service of process under the terms outlined in Rule 4(f). For the same reasons as the Added Defendants, Plaintiff has not served Marshall in proper fashion, and this Court cannot exercise jurisdiction over him. Accordingly, Defendant Marshall is **DISMISSED from this case**.

<u>Glessner and McNair</u>

Defendants Glessner and McNair are residents of North Dakota and New Jersey, respectively. Service of summons and complaint under state law is governed by Rule 4(e)(1) which permits service in any judicial district of the United States, pursuant to the law of the state in which the district court is located, or pursuant to the law of the state in which service is effected. FED.R.CIV.P. 4(e). Defendants contend that N.C. Gen. Stat. § 58-28-45(e)(2) does not provide for service for individual defendants and therefore cannot serve as the means for service for Defendants Glessner and McNair. In so arguing, Defendants ask this Court to read the statute narrowly to construe the provision only to apply to business entities rather than individual persons. The Court disagrees. Section 58-28-45(a) plainly states that it applies to persons acting as agents for insurers by negotiating or procuring insurance and makes no apparent distinction between persons acting in an individual or corporate capacity. Accordingly, Plaintiff's attempts at service comport with the law of North Carolina and are proper as to Defendants Glessner and McNair as they reside within the United States. The Court **DENIES** Defendants Glessner and McNair's respective motions to dismiss for improper service of process.

2.    North Carolina Law and Due Process

The North Carolina long-arm statute accords personal jurisdiction over parties involved in insurance contracts promising to provide benefits in North Carolina. N.C. Gen. Stat. § 1-

75.4(5).  <u>Johnston County. v. R.N. Rouse & Co., Inc.</u>, 414 S.E.2d 30, 35 (N.C. 1992) (describing the statute as authorizing "the courts of North Carolina to exercise jurisdiction over a nonresident contracting within the state or contracting to perform services within the state.").  Due Process requires sufficient minimum contacts between a foreign insurance company or agent and the forum state so that the exercise of jurisdiction complies with traditional notions of fair play and substantial justice.  <u>McGee v. International Life Insurance Co.</u>, 355 U.S. 220 (1957).  A foreign insurance company's promise to defend its policyholders from any claim arising from a loss or accident within the forum state is a sufficient contact to support jurisdiction.  "It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that state."  <u>Id.</u> at 223.  Finally, there appears to be no compelling grounds to find that litigation in North Carolina would be "so gravely difficult and inconvenient" as to place unfairly Defendants "at a severe disadvantage" to Plaintiff.  <u>Burger King v. Rudzewicz</u>, 471 U.S. 462, 478 (1985) (citations omitted).

Plaintiff has alleged that Defendants purposefully availed themselves to North Carolina by soliciting, negotiating, and entering into contracts to provide to Plaintiff insurance against liability from actions occurring at its place of business in North Carolina.  Accordingly, Defendants are subject to suit by the courts of North Carolina and this Court has jurisdiction over them.

      B.    <u>Statute of Limitations</u>

Generally, a motion to dismiss under Rule 12(b)(6) "cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred."  <u>Goodman v. Praxair, Inc.</u>, 494 F.3d 458, 464 (4th Cir. 2007) (en banc).  However, in limited circumstances courts may determine the merits of an affirmative defense at this stage of litigation if "all facts

necessary to the affirmative defense clearly appear[] on the face of the complaint." <u>Id.</u> (quoting <u>Richmond, Fredericksburg & Potomac R. Co. v. Forst</u>, 4 F.3d 244, 250 (4th Cir. 1993)).

    1.  Matters Considered by the Court

  In considering a 12(b)(6) motion, courts may consider may consider exhibits such as contracts that are integral to and were relied upon in the complaint and whose authenticity is not in dispute. <u>Blankeship v. Manchin</u>, 471 F.3d 523, 525 n.1 (4th Cir. 2006). Both parties have submitted affidavits containing material not integral or referred to in the pleadings. Generally, a court is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss. <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999). Where a court exercises its discretion under 12(b)(6) to consider matters outside the pleadings under Rule 12(d), the motion must be treated as one for Summary Judgment. FED.R.CIV.P. 12(d). Rather than review such materials and convert the existing motion to one for summary judgment, the Court declined to consider such materials and limited its consideration to the complaint and specific contracts that were referred to in the complaint and attached as exhibits to motions. A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.).

    2.  North Carolina Limitations

  Plaintiff's claim for unfair and deceptive trade practices is subject to a four year statute of limitations under North Carolina law. <u>Ussery v. Branch Banking and Trust Co.</u>, 743 S.E.2d 650, 654 (N.C. Ct. App. 2013). The remainder of Plaintiff's claims are subject to a three year limitation: negligence (N.C. Gen. Stat. § 1-52 (5)); negligent misrepresentation (§ 1-52(5);

breach of contract (§ 1-52(1)); breach of fiduciary relationship (§ 1-52(1)); breach of duty of good faith and fair dealing (§ 1-52(1)); and fraud (§ 1-52(9)). Id. "A cause of action based on negligence accrues when the wrong giving rise to the right of suit is committed, even though the damages at the time be nominal and the injuries cannot be discovered until a later date." Harrold v. Dowd, 561 S.E.2d 914, 918 (N.C. Ct. App. 2002). Under North Carolina law, a plaintiff must bring an action for breach of contract within three years of the date of the breach. Miller v. Randolph, 478 S.E.2d 668, 670 (N.C. Ct. App. 1996)(citations omitted). A suit for fraud must be initiated within three years of such discovery in order to comply with the statute of limitations. Spears v. Moore, 551 S.E.2d 483, 485 (N.C. Ct. App. 2001).

Plaintiff has alleged the following: that between 1980 and 2009, accidental "occurrences" took place at its site which elicited formal action against Plaintiff by state and federal environmental agencies; that Plaintiff was required to expend funds to mediate these occurrences; that Plaintiff provided timely notice and filed a claim against the policy issued by Defendants; and that Defendants denied the claim on April 15, 2009 in a letter from Tom Mondrala, an independent adjuster for the Insurco Defendants. (Doc. 18: Complaint ¶¶ 20-27). Plaintiff has alleged no facts accounting for events after April 15, 2009.

Here, the complaint contains sufficient facts on its face to establish that the statute of limitations had run for several claims. The complaint alleges that on April 15, 2009, Plaintiff received unequivocal communication that Defendants did not intend to cover the expenses under the policies. Upon receipt of this letter, Plaintiff had sufficient information to know that Defendants would not honor the terms of the contract and that the communications alleged regarding the scope of insurance were not true. Plaintiff's claims for bad faith, fraud, negligence, and negligent misrepresentation all accrued with the receipt of the letter informing

them that they would not be reimbursed under the policies. Under North Carolina law, Plaintiff had three years – until April 15, 2012 – to file suit seeking redress for such wrongs and failed to do so.

The Court, however, declines to dismiss Plaintiff's claim for breach of contract as it is not sufficiently clear from the face of the complaint that such claim is time-barred. North Carolina courts have recognized that where a party has contracted to provide legal defense for another, each legal expense incurred resulting from a failure to defend constitutes a continuous violation. Duke University v. St. Paul Mercury Ins. Co., 384 S.E.2d. 36, 41 (N.C. Ct. App. 1989). Here, Plaintiff has alleged that Defendants breached contractual provisions among which were provisions requiring Defendants to provide legal defense. The dates that such claim accrued are unclear to the Court at present and fail to warrant dismissal.

The Court therefore finds that Plaintiff's claims for bad faith, fraud, constructive fraud, negligence, and negligent misrepresentation are barred by the statute of limitations. The Court **GRANTS** Defendants motion to dismiss such claims and hereby **DISMISSES WITH PREJUDICE** Plaintiff's claims for bad faith, fraud, negligence, and negligent misrepresentation.

    C.    <u>Failure to State a Claim</u>

A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Gicomelli, 588 F.3d 186, 192 (4th Cir. 2009). A motion to dismiss does not resolve factual disputes, the merits of a claim, or the applicability of defenses. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007)). When ruling on a Rule 12(b)(6) motion, the court

must accept as true all of the facts alleged in the plaintiff's complaint and construe all reasonable inferences in favor of the plaintiff. E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011). However, a court should not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions or arguments." United States ex. rel. Nathan v. Takeda Pharm. N. Am., Inc., 707 F.3d 451, 455 (4th Cir. 2013).

Rule 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). "Rule 8 does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation . . . . A pleading that offers 'labels' and 'conclusions' or 'a formulaic recitation of the elements of a cause of action will not do . . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 677-78.

1.      Unfair and Deceptive Trade Practices

Plaintiff alleges that Defendants engaged in unfair and deceptive trade practices in violation of North Carolina law (UDTPA). The North Carolina UDTPA makes unlawful unfair or deceptive acts concerning commerce. See N.C. Gen. Stat. § 75-1.1. To prevail on a claim of unfair or deceptive trade practices, a plaintiff must show that defendants: (1) committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff suffered an actual injury as a proximate result of defendant's misrepresentations or unfair conduct. Ellis v. Smith-Broadhurst, Inc., 268 S.E.2d 271, 273-74 (N.C. Ct. App. 1980).

On balance, Plaintiff's complaint is long on "naked assertion[s] devoid of further factual enhancement" and short on plain, factual statements. Iqbal, 556 U.S. at 678. Specifically, the claim for unfair trade practices falls squarely within the class deemed insufficient under Iqbal: it does not allege which of the Defendants made communications to Plaintiff; it does not allege

when such communications were made; nor does it provide any facts attesting to the nature of such communications. The complaint treats the Defendants as an undifferentiated class, and, with few exceptions, fails to identify discrete actions on the part of individual Defendants. The complaint merely states that (presumably one or more of) the Defendants (at some point in time) made (unspecified) deceptive statements inducing Plaintiff to purchase insurance. Likewise, Plaintiff's allegations of illegal rebates and solicitations of business without a license are not supported by any factual content. Plaintiff does not allege any facts to support that he was injured as a result of these actions. A complaint need not contain an exhaustive outlay of facts to survive a 12(b)(6) motion, but it requires some factual content beyond that which Plaintiff has alleged in its amended complaint.

The few specific facts alleged by Plaintiff address matters pertaining to a breach of contract rather than discrete actions capable of supporting an action for unfair or deceptive trade practices. North Carolina law "limit[s] the circumstances in which an ordinary contract dispute can be transformed into a tort action." Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 345 (4th Cir. 1988). Where, as here, Plaintiff's claims have a "contractual center," the trial court should "ask simply whether a party adequately fulfilled its contractual obligations." Id. The only cause of action alleged by Plaintiff is that Defendant failed to pay a claim or otherwise defend Plaintiff as required by the contracts. Plaintiff has alleged no injury related to any other actions of Defendants. The facts alleged do not state a plausible claim for relief for unfair and deceptive trade practices and Defendants' motion to dismiss such claim is **GRANTED**. The Court **DISMISSES with prejudice** Plaintiff's claim for unfair and deceptive trade practices.

### 2. Breach of Contract

Plaintiff has pleaded facts sufficient to state a claim for breach of contract.  Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiff's claim for breach of contract for failure to state a claim upon which relief can be granted.

### D. <u>Arbitration</u>

Plaintiff lodged several objections to the recommendation of the Magistrate Judge that this Court compel arbitration.  Specifically, Plaintiff argues that the clause was induced by fraud and duress.  Additionally, Plaintiffs argue that the English clause is unconscionable and void under federal and North Carolina law; that the AAA clause is unconscionable and void insofar it prohibits punitive or exemplary damages; and, that the spills occurred during periods not covered by an arbitration agreement.  (Doc. 46 at 3).  The Court reviews these questions de novo.

In evaluating a motion to compel arbitration, the Court treats the facts as it would in a motion for summary judgment, construing all facts and reasonable inferences in the light most favorable to the non-moving party.  <u>Shaffer v. ACS Gov't Servs., Inc.</u>, 321 F. Supp.2d 682, 683-84 n.1 (D. Md. 2004); <u>Dennis v. Columbia Colleton Med. Ctr., Inc.</u>, 290 F.3d 639, 645 (4th Cir. 2002).  The motion to compel arbitration should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

Defendants attached as exhibits all of the relevant insurance contracts and agreements. (Doc. 28:1-12).

1.    The English Clause

Prior to August 24, 1993, the contracts between the parties did not contain an arbitration clause. On that date, the parties agreed to an arbitration clause which they appended to the CGL-1009 contract. The clause established that:

> Any dispute or difference between you [Forshaw] and us [Inter-Industry Insurance Co. Ltd.] in connection with this policy of which we shall become aware of on or after the effective date of this Endorsement, regardless of the date of the occurrence which gives rise to such dispute or difference, shall be referred to and determined by Arbitration.

(Doc. 28-6 at 31: Arbitration Agreement Cl. 2a).

This agreement is noteworthy in several respects: it provides that arbitration would be construed and governed by the laws of England, (Id. cl. 1); it includes terms to arbitrate disputes "regardless of the dates of the occurrence" (Id. cl. 2a); it establishes that the decision of the arbitrators shall be "final and binding upon the parties." (Id. cl. 2d); and, it establishes that the parties shall choose the venue for such arbitration. (Id. cl. 2f).

Subsequent contracts, signed in 1994 and 2001 respectively, (CGL-4013 and UML-4014) contained the English clause in identical form. (Docs. 28-7 at 41; 28-9 at 20).

2.    AAA Clause

On November 30, 2002, the parties signed an agreement for binding arbitration which established the following:

> Any dispute or difference between you, the insured, and we, the insurer, arising out of, in relation to, or in connection with this policy of insurance will be referred to and determined by arbitration before three arbitrators, administered by the American Arbitration Association under its Commercial Arbitration Rules…

> The arbitration will take place in the City and State of New York. Local rules of law as to procedure will apply.

The award of the arbitrators shall not include an award of punitive or exemplary damages.

(Docs. 28-8 at 37; 29-9 at 25).

Additionally, on November 30, 2002, the parties signed a provision expressly deleting, in whole, the English clause from the contract. (Doc. 28-9 at 21). On November 30, 2004, the parties signed CGL-4109 and UML-4106, both of which contained the AAA clause in identical form. (Docs. 28-10 at 35; 28-11 at 21). These policies were cancelled on November 30, 2007. (Docs. 28-10 at 38; 28-11 at 24).

### 3. Agreement with RIBI/Manitoba Clause

On August 31, 2006, Plaintiff entered into an Administrative Services Agreement with Rubin/RIBI whereby the latter agreed to act on behalf of Plaintiff with respect to business transacted with Insurco. (Doc. 24-1 at 1). The Agreement contained the following provision:

THIS AGREEMENT shall be governed and construed in accordance with the laws of Manitoba, Canada. Any dispute or difference between Client and R.I.B.I. shall be referred to binding arbitration in Manitoba under rules and procedures agreed to by the arbitrators. Each party shall appoint one arbitrator and the arbitrators so appointed shall forthwith appoint a third arbitrator. In the event a party fails to appoint an arbitrator within thirty (30) calendar days of service by the other party, the other party shall be entitled to appoint a second arbitrator. The costs and expenses of the arbitration shall be borne equally by both the parties. The decision of the arbitrators shall be final and binding on the parties.

(Doc. 24-1 at 2).

### 4. Agreement to Arbitrate

Arbitration, in various aspects, is governed by both state and federal law. "When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944. Under North Carolina law, the party seeking arbitration must show that the parties mutually agreed to arbitrate their disputes. D & R Const.

Co., Inc. v. Blanchard's Grove, 667 S.E.2d 305, 307 (N.C. Ct. App. 2008).  In determining that a dispute is subject to arbitration, a court must establish that: (1) the parties had a valid agreement to arbitrate; and (2) that the dispute falls within the substantive scope of that agreement.  Munn v. Haymount Rehab & Nursing Ctr., Inc., 704 S.E.2d 290, 294 (N.C. Ct. App. 2010).

Additionally, Arbitration agreements arising from commercial relationships between United States citizens and parties who are citizens of foreign countries are governed by the terms set out in Chapter 2 of the Federal Arbitration Act (the Act).  9 U.S.C. § 202.  The Act requires demonstration of four elements: (1) a dispute between the parties; (2) a written agreement including an arbitration provision purporting to cover the dispute; (3) the relationship of the transaction, as evidence by the agreement, to interstate or foreign commerce; and, (4) the failure or refusal of one party to arbitrate the dispute.  Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991).

Where the federal Act applies to an arbitration agreement, North Carolina law is pre-empted with respect to the applicability of statutes barring enforcement of forum selection clauses requiring arbitration in other states.  Szymczyk v. Signs Now Corp., 606 S.E.2d 728 (N.C. Ct. App. 2005).  The provisions of the Act, therefore, govern the validity of the forum selection clause.

The Court finds no difficulty finding an arbitration agreement existed between the parties and that this dispute falls within the ambit of such agreements.  The parties signed multiple agreements, in foreign commerce, to submit "any dispute" related to the insurance contracts to third parties for a "final and binding" decision.  (Doc. 28-6 at 31).  The dispute between the parties turns on alleged breaches of the terms of one or more of the insurance contracts at issue and falls squarely within the terms articulated by the agreements to arbitrate.

Plaintiff argues that arbitration is not appropriate because "a large portion of the discrete spills at issue in the Complaint occurred" under the effective dates of contracts that did not contain an arbitration provision. This argument fails for two reasons. First, Plaintiff did not allege in its complaint when any of the spills occurred, and the Court is not bound to, and does not, consider unsupported factual statements in arguments. Second, the English Clause contained specific language stating that the parties could submit to arbitration "any dispute" related to the policy "regardless of the date of the occurrence which gives rise to such dispute." (Docs. 28-6 at 31; 28-7 at 41). This language suggests that the arbitration provision was meant to apply retroactively to include disputes dating back to the effective date of the initial contract, and therefore included spills that might have occurred before August 24, 1993 when the initial arbitration agreement went into effect. Accordingly, the Court finds a valid arbitration clause that addresses the dispute at issue.

5.     Policy Considerations

Plaintiff objected that the arbitration agreements are null and void because they were induced by fraud and duress. (Doc. 46 at 2). Plaintiff, however, offered no evidence to support this contention, and provided no factual or legal basis for a court to make a finding that any of the agreements was so induced.

Plaintiff also objected on public policy grounds that the agreements are unconscionable and void due to provisions that limit the pool of potential arbitrators to "present and former officials of English domiciled casualty insurance or reinsurance companies," or prohibit the award of punitive or exemplary damages. Plaintiff cited to several cases that deal with arbitration agreements that limit relief that would otherwise be available under statute. "Statutory claims may be subject to agreements to arbitrate, so long as the agreement does not

require the claimant to forgo substantive rights afforded under the statute." <u>Timothy Booker v. Roger Half Int'l., Inc.</u>, 413 F.3d 77 (2005).

The Fourth Circuit has found that public policy objections to arbitration agreements are proper for consideration by courts at the enforcement stage, rather than when deciding to compel arbitration. <u>Aggaro v. MOL Ship Management Co., Ltd.</u>, 675 F.3d 355, 372 (2012) (citing <u>Mitsubishi Motors Corp v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 638 (1985)). Courts have consistently found that prospective waiver of a parties' rights "contravene[s] public policy only when there is "no subsequent opportunity for review" in federal court. <u>Aggaro</u>, 675 at 371 (citing <u>Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer</u>, 515 U.S. 528, 540 (1995)). Here, the arbitration proceedings are subject to review by a federal court at which public policy objections might be raised. It suffices for now that such review is available.

6.     Court's Authority to Stay Proceedings and Determine Venue

Finally, the Court turns to the most pressing and difficult issue: whether it can compel arbitration in a particular location. This problem arises from a confluence of factors rarely encountered, namely that the series of agreements is governed by three different venue provisions, not one of which mandates arbitration in this judicial district, and, the complaint does not contain sufficient factual material to identify which agreement applies.

A Court cannot refer a matter to arbitration unless the district court has the authority to order arbitration to proceed in a particular place. <u>Jain v. de Mere</u>, 51 F.3d 686 (7th Cir. 1995). There exists two potential statutory bases for compelling arbitration in this case. A first source of authority is found in Chapter 1 of the FAA.

1.      Chapter 1 of the Act

9 U.S.C. § 208 indicates that "Chapter 1 applies to actions and proceedings brought under [Chapter 2] to the extent that [Chapter 1] is not in conflict with this chapter or the Convention as ratified by the United States."  Chapter 1 contains two general provisions regarding arbitration.

a.      Section 3 of Chapter 1

Upon motion of a party, Section 3 of the Act requires a court to stay proceedings pending arbitration should it find an issue referable to arbitration under the parties' contract.  The specific language of Section 3 is as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

The verb "shall" dictates that it is binding, rather than discretionary, on the part of courts to stay proceedings once an arbitration agreement has been recognized.  However, a Section 3 order does not concern itself with the place of arbitration.  Rather the court merely enters an order staying proceedings until such arbitration proceedings are completed.  <u>Batson Yarn and Fabrics Machinery Group, Inc. v. Saurer-Allma GmbH-Allgauer M.</u>, 311 F.Supp. 68, 75-77 (D.S.C. 1970).  In this case, where it is clear that the parties signed arbitration agreements to cover the dispute at issue, the Court is required to stay the proceedings until arbitration is completed.  Section 3, however, does not address where such arbitration proceedings should take

place but merely holds that arbitration should take place "according to the agreement."  9 U.S.C. § 3.

> b.    Section 4 of Chapter 1

Section 4 of the Act provides that:

> A party aggrieved by the alleged failure, neglect, or refusal of another party to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration of the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.  The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

9 U.S.C. § 4.

In addition to setting forth the circumstances under which parties may seek to compel relief, § 4 also establishes the appropriate venue in which they may do so.  Lauer, 49 F.3d at 327. Federal courts of appeal have come to different conclusions about whether section 4 provides authority for a district court to compel arbitration outside of its district in accordance with a forum selection clause.  The Seventh Circuit has held that "where the arbitration agreement contains a forum selection clause, only the district *in that forum* can issue a § 4 order compelling arbitration."  Id.    In contrast, the Fifth Circuit has concluded that a district court has authority under Section 4 to compel arbitration outside of the district in accordance with a specific provision in the contract.  Purdy v. Monex Intern. Ltd., 867 F.2d 1521 cert denied, 493 U.S. 863 (1989).  The factual composition of this case – where the parties have agreed to multiple venues

and it is not clear to the Court which provision governs – establish that even if it followed the Fifth Circuit, it would not be clear which contractual provision applied.

>    2.    Chapter 2 of the Act

A final source of authority is found in Chapter 2 of the Act. Section 206 provides that:

> A court having jurisdiction under this chapter [Chapter 2] may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. Such court may also appoint arbitrators in accordance with the provisions of the agreement.

9 U.S.C. § 206

Although Section 206 clearly provides courts with authority to compel arbitration outside of their own district, it can only be done where the agreement identifies a specific venue. Here, the Court faces multiple and disparate venues agreed to by the parties. Section 206, therefore, does not conclusively address the question presented here where there is more than one potential arbitration agreement and one does not specify a venue.

Ultimately, the Court finds itself in an unhappy bind. Having recognized a valid agreement to arbitrate, it is required to stay the proceedings even as it lacks authority to compel arbitration in contravention of express provisions in the agreements. The purpose of the Act is to make arbitration agreements valid and enforceable. Southland Corp. v. Keating, 465 U.S. 1, 12-13 (1984). An arbitration agreement, including its forum selection clause, is a freely negotiated contract between the parties and courts must give effect to their provisions. The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12-15 (1972). A district court "lacks authority to compel arbitration . . . in its own district, if another [district] has been specified for arbitration." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer, 49 F.3d 323, 328 (7th Cir. 1995). While the Fourth Circuit has not addressed this issue directly, it has held that a "district court deciding a motion to compel arbitration shall defer to the terms of the parties' agreement. The district court

must, therefore, apply a forum selection clause contained in the agreement if such a clause exists." Elox Corp. v. Colt Industries, Inc., 1991 WL 263127, at *1 (4th Cir. 1995) (citing Bremen, 407 U.S. at 12-15).

This matter is further compounded by the fact that each forum selection clause provides different substantive law to govern the dispute. Were the Court to guess which forum selection agreement governed and compel arbitration accordingly, the result would be to dictate to the parties which substantive law governed the dispute, effectively interposing the will of the Court upon the parties' intentions upon signing the agreement. For the Court, this is a bridge too far inasmuch as it imposes on the parties a substantive law that risks both contravening their agreed intentions and altering the outcome of the dispute.

With scant case law as guide, the Court is thrust into the murky areas between the venue requirements imposed by Congress and those agreed to by the parties.[4] Having established both personal and subject matter jurisdiction, the Court possesses the ability to hear the suit on the merits. "The jurisdiction of federal courts – their power to adjudicate – is a grant of authority to them by Congress and thus beyond the litigants to confer." Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 167 (1939). Likewise, in the absence of agreements directing

---

[4] The Rubin Defendants moved under 12(b)3 to dismiss for improper venue, but the Insurco Defendants did not. Normally, a party waives the defense of improper venue by failing to move to dismiss under FRCP 12(b)(3). Here, the Insurco Defendants have moved this Court to compel arbitration. Because the venue provisions are inseparable from the question of compelling arbitration, the Court deems that objections to venue are implied in the motion to compel arbitration as the motion directly implicates the ability of a court to compel arbitration in accordance with the locations specified in the agreement. Requesting the Court enforce provisions that require arbitration outside of this district implies that a party has not waived objections to venue within this district. Finally, unlike a motion under Rule 12(b)(6), a motion for venue "allows the court to consider freely evidence outside the pleadings." Sucampo Pharm., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 550 (4th Cir. 2006).

arbitration elsewhere, this district would be the proper venue under 28 U.S.C. § 1391 as the breach of contract and torts alleged affected a business operating in this district.[5]

Having dismissed the torts, the Court is left only with claims for breach of contract that fall squarely under the provisions of agreements directing arbitration to occur elsewhere. Courts have, in some cases, treated choice of forum provisions in the FAA as venue requirements. In Cortez Byrd Chips, Inc. v. Bill Halbert Const. Co., for example, the Supreme Court classified 9 U.S.C. §§ 9-11 as "venue" provisions that have the effect of supplementing the general federal venue statute. 529 U.S 193, 195 (2000). While the Court in Cortez Byrd Chips was not considering section 4 of the Act specifically, it expressly referred to the provisions of section 4 and described them as "more obviously permissive" than the sections it was considering. Id. at 199. On balance, the Court explained that the Act's venue provisions, enacted in 1925, were intended to have a "liberalizing effect" insofar as they expanded the choice of venue and provided for the enforcement of forum selection agreements. Id. at 199-200. Significantly, the Court cited the Act's intent to achieve "desired flexibility of parties in choosing a site for arbitration." Id. at 201. On balance, the Court in Cortez Byrd gave every indication that it viewed the Act as part of a whole statutory framework setting out venue requirements to govern the choice of forum as well as the enforcement of such clauses.

Accordingly, the Court treats the choice of forum in the arbitration agreements as venue provisions agreed to by the parties and enforceable by a court. Where, as here, venue is improper as the parties have expressly agreed to arbitrate the dispute in other locations, a court can either dismiss the action or transfer it to a jurisdiction where venue is proper. A transfer to cure improper venue should only occur when such a transfer would be "in the interests of

_____

[5] Because this action was initially filed in this Court, 28 U.S.C. § 1391 provides the basis for venue. Had it been removed from state court, 28 U.S.C. § 1441 would apply. The difference between these sections is not at issue here.

justice." 28 U.S.C. § 1406(a). Having found that a transfer would not be in the interest of justice, the Court is left with no choice but to dismiss the remaining claims for breach of contract under 28 U.S.C. § 1406(a). The court however, **dismisses the breach of contract claims without prejudice** to allow Plaintiff to seek to arbitrate the dispute in accordance with the pertinent agreement.

## III.   CONCLUSION

**It is hereby ordered that:**

1. The Recommendation of the Magistrate Judge (Doc. 44) is **ADOPTED in part**. Specifically, the Court adopts the recommendation to compel the parties to arbitration.

2. **All claims** against Defendants Inter-Industry Company, Ltd., Imanco, Ltd., Insurco International, Ltd., Agrichem Insurance Company, Ltd., and Jonathan Marshall are **DISMISSED** for improper service of process.

3. Defendants' Motions to Dismiss for failure to state a claim for Unfair and Deceptive Trade Practices under North Carolina Law are **GRANTED** and this claim is **DISMISSED WITH PREJUDICE.**

4. Defendants' Motion to dismiss Plaintiff's claims for Bad Faith, Fraud, Negligence, Constructive Fraud, Negligence, and Negligent Misrepresentation for failure to state a claim upon are **GRANTED** and such claims are **DISMISSED WITH PREJUDICE.**

5. Plaintiff's Claim for Breach of Contract is **DISMISSED WITHOUT PREJUDICE** under 28 U.S.C. § 1406(a).

6. The Clerk of Court is directed to close this case.

Signed: 3/4/2014

Robert J. Conrad, Jr.
United States District Judge